**In re Grand Jury Subpoena Directing Edward TAYLOR to Appear and Testify Before a Grand Jury on July 20, 1977 at 10:00 A.M.**

No. 301, Docket 77–1353.

United States Court of Appeals, Second Circuit.

Argued Nov. 7, 1977.

Decided Dec. 12, 1977.

---

court's *in camera* examination of an affidavit and exhibits submitted by the Government attorney, who is directing the grand jury investigation. The affidavit and exhibits, sealed by the court's order, allegedly establish that a conflict exists between Mr. Erlbaum's representation of appellant and of other targets of the investigation.

The facts of the case are uncomplicated. On July 18, 1977, appellant was served with a subpoena to appear and testify before a grand jury investigating possible federal offenses related to the organization, construction, and operation of direct-lease day care centers in New York City. He retained Mr. Erlbaum to advise him in connection with his grand jury appearance, which was scheduled for August 3.

On July 29, the Government moved for an order disqualifying Mr. Erlbaum on the ground that there was a conflict of interest in his representation of appellant and of Gary Joseph, Jeffrey Podell, and Leonard Simon, the other suspects. The Government stated that, based on other evidence already presented to the grand jury, it was aware that appellant possessed knowledge that would incriminate these men and that it was prepared to seek use-immunity for Taylor and compel him to testify before the grand jury. The Government refused to disclose to Mr. Erlbaum and to appellant, Taylor, the underlying basis of the alleged conflict of interest on the ground that to do so would violate the secrecy of the grand jury proceedings. Rule 60(e), F.R.Cr.P. Instead, the Government asked the court to review *in camera* certain materials already before the grand jury which would demonstrate the conflict and the need for independent counsel.

At a hearing before the court on July 29, Mr. Earlbaum requested that he and appellant be apprised of the undisclosed *in camera* material in order to allow appellant to make an informed choice of counsel. Mr. Erlbaum stated that Messrs. Taylor, Joseph, Podell, and Simon were related by business and family ties, that he had been appellant's family lawyer for many years, that he had represented these men in connection

William M. Erlbaum, Kew Gardens, N.Y. (Lyon & Erlbaum, Kew Gardens, N.Y., on the brief), for appellant Edward Taylor.

Harvey M. Stone, Asst. U.S. Atty., Eastern District of New York, Brooklyn, N.Y. (David G. Trager, U.S. Atty., Eastern District of New York, Brooklyn, N.Y., on the brief), for appellee.

Before KAUFMAN, Chief Judge, and SMITH and ANDERSON, Circuit Judges.

ROBERT P. ANDERSON, Circuit Judge:

This is an appeal from the order of the United States District Court for the Eastern District of New York, Bramwell, *Judge*, prohibiting appellant, Edward Taylor, from retaining William Erlbaum, Esq., as his attorney in connection with a grand jury subpoena. The order was issued after the

with an investigation by the New York City Department of Investigations of day care centers, and that he was not aware of any facts that would demonstrate the appellant's interests were antagonistic to those of his other clients. Taylor twice expressed to the court his desire to retain the services of Mr. Erlbaum, unless it was made clear that his (Taylor's) testimony would be in conflict with the interests of his associates.

After examining the Government documents *in camera* as requested, the court advised Taylor that, when called before the grand jury, he would be asked questions which would implicate others, as well as himself, in the alleged criminal activities. It appears from the court's remarks to appellant that the Government exhibits had convinced the court that if appellant answered the grand jury's likely questions truthfully, under a grant of immunity from the Government, he would be required to incriminate Mr. Erlbaum's other clients. Because of this potential conflict, the court prohibited appellant from retaining Mr. Erlbaum as his attorney.

■■■■■ The issue on appeal is whether or not the district court's *in camera* inspection of Government documents and subsequent order violated Taylor's constitutional right to counsel of his choice.[1]

Although grand jury investigations are not criminal proceedings, the procedure that this court has established for adjudicating the propriety of a lawyer representing multiple criminal defendants provides a useful framework for discussing the rights of two or more persons, subpoenaed as witnesses to testify before a grand jury or who are themselves under grand jury investigation, who choose to retain the same lawyer. This court has held that when a potential conflict of interest arises, before, at, or during the trial of several defendants who have retained the same attorney, the trial court should conduct a hearing to determine whether there exists a conflict which would prevent the accused from receiving the kind and quality of legal advice and assistance that is guaranteed by the Sixth Amendment. *Abraham v. United States*, 549 F.2d 236 (2d Cir. 1977). The defendant should be fully apprised of the facts underlying the potential conflict and should be given the opportunity to express his views. *United States v. Carrigan*, 543 F.2d 1053 (2d Cir. 1976). Although two or more defendants are not entitled to have the same lawyer as a matter of right, *Abraham v. United States, supra; United States v. Berstein*, 533 F.2d 775 (2d Cir.), *cert. denied*, 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976); each suspect or accused may knowingly and intelligently waive any claims which might arise from counsel's conflict of interest. *United States v. Armedo-Sarmiento*, 524 F.2d 591 (2d Cir. 1975).

In this case, however, the Government asserts that the public's interest in grand jury secrecy and thorough grand jury investigations, precludes the use by the district court of this procedure. First, it contends that because of the importance of preserving grand jury secrecy, the court must dispense with a hearing at which appellant will be fully apprised of the facts underly-

---

1. The Supreme Court has held that a witness before a grand jury cannot insist, as a matter of constitutional right, on being represented by counsel. *In re Groban*, 352 U.S. 330, 77 S.Ct. 510, 1 L.Ed.2d 376 (1952). Counsel may, however, wait outside of the grand jury room; and, at any and all times during questioning, a witness may leave the room to consult with his attorney. *United States v. Mandujano*, 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976); *United States v. Capaldo*, 402 F.2d 821 (2d Cir. 1968), *cert. denied*, 394 U.S. 989, 89 S.Ct. 1476, 22 L.Ed.2d 764 (1969); cf. Rule 6(d), F.R.Cr.P. This accommodation between the investigatory role of the grand jury and the right of a witness to enjoy the advice of legal counsel necessarily implies that counsel assisting the witness be the counsel of his choice. To impose counsel upon a witness against his will or arbitrarily to forbid him from retaining a particular attorney unnecessarily obstructs his ability to enter private contractual arrangements for representation and would deprive him of his constitutional right to due process of law. See *NCK Org'n Ltd. v. Bregman*, 542 F.2d 128, 135 (2d Cir. 1976); *Hull v. Celanese Corp.*, 513 F.2d 568, 572 (2d Cir. 1975); *cf. United States v. Sheiner*, 410 F.2d 337 (2d Cir.), cert. denied, *Piacentile v. United States*, 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969); *United States v. Plattner*, 330 F.2d 271 (2d Cir. 1964); *Carter v. Illinois*, 329 U.S. 173, 67 S.Ct. 216, 91 L.Ed. 172 (1946).

ing the alleged conflict so that he can properly determine the existence of disqualifying interests on the basis of the grand jury testimony and the Government affidavits submitted *in camera*. Second, the Government argues that the appellant cannot waive his right to conflict-free counsel and proceed with Mr. Erlbaum as his attorney. The purpose of the Government's motion to disqualify Mr. Erlbaum is not to protect appellant's right to counsel, but rather to promote the public's interest in an effective, thorough grand jury investigation. See *In re Gopman*, 531 F.2d 262 (5th Cir. 1976); *Pirillo v. Takiff*, 462 Pa. 511, 341 A.2d 896 (1975), *appeal dismissed and cert. denied*, 428 U.S. 1083, 96 S.Ct. 873, 47 L.Ed.2d 94 (1976); cf. *Matter of Grand Jury Empaneled January 21, 1975*, 536 F.2d 1009 (3rd Cir. 1976). It contends, therefore, that judicial interference with private arrangements for representation by one attorney of two or more grand jury targets is warranted because the progress of the Government's investigation will be threatened if an attorney in the position of Mr. Erlbaum advises a witness to assert his privilege not to testify under all circumstances, even after he is offered use-immunity. In effect, the Government is attempting to bring about the compulsory disqualification of Attorney Erlbaum as a tactical maneuver to compel the appellant to testify and to prevent what it anticipates will be efforts by the witnesses summoned for the grand jury investigation to "stonewall" the work of the grand jury.[2]

We are satisfied, however, that the Government's motion to disqualify Mr. Erlbaum and the court's order prohibiting appellant from retaining his services are premature. The evidentiary basis for these actions is insufficient. See *Matter of Grand Jury Empaneled January 21, 1975*, supra; *In re Investigation Before April 1975 Grand Jury*, 174 U.S.App.D.C. 268, 531 F.2d 600 (1976). Appellant has not yet appeared before and been questioned by the grand jury; nor has he indicated that he intends to invoke his privilege not to testify on the ground of self-incrimination. There is little or no evidence in the open record which reveals appellant's relationship to Mr. Erlbaum's other clients. Most importantly, he has not formally been offered immunity, pursuant to 18 U.S.C. § 6002, in exchange for his testimony. It is only when this stage in the grand jury proceedings has been reached, the Executive officer has approved the offer of immunity, and the appellant refuses on the advice of counsel to answer a proper question, that the issue of Mr. Erlbaum's conflict of interest in continuing to represent appellant will be ripe for a hearing.[3]

With respect to the Government's first claim, the court's *in camera* examination of the affidavit and grand jury minutes was not justified by the need for grand jury secrecy in this case. *In camera* proceedings are extraordinary events in the constitutional framework because they de-

---

**2.** The Government does not claim that the district court would have the power to prohibit appellant Taylor from retaining the services of Mr. Erlbaum at a trial, following the return of a true bill against Taylor by the grand jury, even if a similar conflict of interest was created by the Government's offer to recommend dismissal of charges brought against him in return for his testimony. In these circumstances, the Government concedes that the right of appellant to waive his Sixth Amendment right to effective assistance of counsel would outweigh its interest in securing his testimony at trial.

**3.** Canon 5 of the Code of Professional Responsibility (1975) states that a lawyer should exercise independent professional judgment on behalf of a client. This court has recognized the Code as prescribing appropriate guidelines for

the professional conduct of the bar. *NCK Org'n Ltd. v. Bregman*, 542 F.2d 128 (2d Cir. 1976); *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384 (2d Cir. 1976); *Hull v. Celanese Corp.*, 513 F.2d 568 (2d Cir. 1975).

In any situation in which an attorney represents several targets of a grand jury investigation or several defendants in a criminal trial, he has clients with potentially differing and conflicting interests, especially in light of the Government's role in initiating and going forward with the criminal process. Under such circumstances the attorney must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he continues the multiple employment. Ethical Consideration 5–14.

prive the parties against whom they are directed of the root requirements of due process, *i.e.* notice setting forth the alleged misconduct with particularity and an opportunity for a hearing, see *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). They can only be justified and allowed by compelling state interests. See *United States v. Bell,* 464 F.2d 667 (2d Cir.), *cert. denied,* 409 U.S. 991, 93 S.Ct. 335, 34 L.Ed.2d 258 (1972). Whenever the legal rights of individuals are to be adjudicated, the presumption is against the use of secret proceedings. Cf. *Hannah v. Larche,* 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). *In camera* examination of evidence by a court will not, for example, suffice to sustain a judgment of conviction where the Government, because of a claim of privilege, has failed to disclose to a defendant information which might be material to his defense. See *Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957); *United States v. Coplon,* 185 F.2d 629 (2d Cir. 1950), *cert. denied,* 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688 (1952); *United States v. Grayson,* 166 F.2d 863 (2d Cir. 1948); *United States v. Andolschek,* 142 F.2d 503 (2d Cir. 1944); cf. *United States v. Reynolds,* 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953); *In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948). The principal function of the due process clause is to ensure that state power is exercised only pursuant to procedures adequate to vindicate individual rights. See *Wolff v. McDonnell, supra,* 418 U.S. at 558, 94 S.Ct. 2963. As the Supreme Court stated in *Carroll v. Princess Anne,* 393 U.S. 175, 183, 89 S.Ct. 347, 352, 21 L.Ed.2d 325 (1968), "The value of a judicial proceeding, as against self-help by the police, is substantially diluted where the process is *ex parte* because the court does not have available the fundamental instrument of judicial judgment: an adversary proceeding in which both parties may participate."

■ *In camera* proceedings are used, however, to determine if the Government's assertion of a legitimate privilege in non-disclosure of information will deprive a defendant of constitutional rights; see *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *United States v. Bell, supra* ; or to prevent the frustration of a statutory purpose to limit access to Government papers, see Rule 16(d)(1), F.R.Cr.P.; *Goldberg v. United States,* 425 U.S. 94, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976); *Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); *Palermo v. United States,* 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959); *United States v. Pacelli,* 491 F.2d 1108 (2d Cir.), *cert. denied,* 419 U.S. 826, 95 S.Ct. 43, 42 L.Ed.2d 49 (1974). In these circumstances, *in camera* proceedings serve to resolve, without disclosure, the conflict between the threatened deprivation of a party's constitutional rights and the Government's claim of privilege based on the needs of public security. See *Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *United States v. Brown,* 539 F.2d 467 (5th Cir. 1976).

■ In order to determine, therefore, whether the *in camera* proceeding conducted by the district court afforded appellant all of the process to which he was entitled, the nature of the Government interest must be balanced against the private interests that are affected by the court's action. See *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Cafeteria & Restaurant Workers Union v. McElroy,* 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). In the present case, the Government's interest in the secrecy of the grand jury minutes in question is minimal. Cf. *In re Investigation Before April 1975 Grand Jury, supra,* at 606–607, n. 11. Appellant does not seek a license to rummage through the Government's files; rather, he seeks a limited and discrete disclosure of the factual basis for the assertion that he will be asked to incriminate his associates and that, therefore, he requires independent legal counsel. For its part, the Government does not intend that this information will never

be made known to appellant; nor has it stated that disclosure would pose a danger to the safety of any individual whose identity might be revealed. See *Dennis v. United States, supra.* Instead, the material will be kept secret only as long as appellant is represented by Mr. Erlbaum. Once the court has disqualified Mr. Erlbaum, the Government is prepared to summon appellant before the grand jury and, through its questions, reveal to him the same information that has been disclosed to the court *in camera.* Although grand jury proceedings are conducted in secret, witnesses who appear before it are not sworn to secrecy. Rule 6(e), F.R.Cr.P.[4] The Government concedes that not only would appellant be free to discuss his grand jury testimony with anyone, but also that he could rehire Mr. Erlbaum to represent him at any subsequent criminal proceeding. It is fair to say that the secrecy interest, which the Government seeks to protect through the court's *in camera* proceeding, would obtain only as long as it will take the appellant to reach the door to the grand jury room through which he will leave.

Balanced against this minimal governmental interest are valuable rights of both appellant and Mr. Erlbaum. The *in camera* proceeding deprives them, respectively, of an opportunity to refute the claims made by the Government with respect to Taylor's right to counsel of his choice, *Chandler v. Fretag,* 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954); *NCK Org'n Ltd. v. Bregman,* 542 F.2d 128, 135 (2d Cir. 1976); *Hull v. Celanese Corp.,* 513 F.2d 568, 572 (2d Cir. 1975); cf. *Powell v. Alabama,* 287 U.S. 45, 68–69, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *United States v. Arlen,* 252 F.2d 491 (2d Cir. 1958);

his right to associate for the purpose of retaining legal representation, *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); and, the right of Mr. Erlbaum to practice one's chosen profession, *Dent v. West Virginia,* 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889); cf. *Willner v. Committee on Character and Fitness,* 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963); *In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968).

The court, in adjudicating their individual rights *ex parte,* is informing appellant that the Government has conclusively shown that he will have to incriminate himself and his associates when questioned by the grand jury, and, therefore, cannot intelligently waive any conflicts brought about by Mr. Erlbaum's representation of him and of the other individuals hereinbefore mentioned, cf. *United States v. Bernstein, supra*; and, it is informing Mr. Erlbaum that the Government has conclusively shown that his continued representation of appellant for this occasion would be unethical, cf. *Fleischer v. Phillips,* 264 F.2d 515 (2d Cir.), *cert. denied,* 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1030 (1959).

These significant pronouncements are made in derogation of basic constitutional rights and without the benefit of the enlightenment which accompanies an adversary proceeding. Under these circumstances, the interests of the appellant and Mr. Erlbaum far outweigh those of the Government and render the *in camera* proceedings of the court in this case improper.[5]

With respect to its second claim, the Government has failed to demonstrate that Mr. Erlbaum's representation of appellant

---

4. The Government contends that, if appellant is represented by Mr. Erlbaum, family and business pressures will be brought to bear upon appellant to refuse to testify before the grand jury under any circumstances. What the Government fails to acknowledge is that these same pressures are likely to be brought to bear upon appellant to disclose the substance of his grand jury testimony. The targets of the investigation are aware that the Government has sought appellant's testimony and that it is prepared to offer him immunity in return for information incriminating them.

5. In so holding, the court does not suggest that the material submitted to the district court *in camera,* and now under seal, must be turned over to appellant for inspection. It will be sufficient for the grand jury to summon appellant and put questions to him which may require him to implicate his associates in criminal activity, thereby bringing the conflict of interest issue into sharper focus.

poses a threat to the investigative function of the grand jury. Appellant is willing to testify before the grand jury and he and Mr. Erlbaum assert that they can conceive of no situation in which his testimony would be inimical to the interests of Mr. Erlbaum's other clients. Appellant has informed the court that if the grand jury asked him for information which required him to incriminate his associates, he would seek independent counsel.

■ The court should not assume that unless appellant testifies as the Government predicts, he will be committing perjury. Cf. *In re Oliver, supra,* 333 U.S. at 277–278, 68 S.Ct. 499. Neither should the court assume that an offer of immunity will

**6.** The Government has called to our attention the recent decision by the Fourth Circuit in the case of *In re Investigation Before the February 1977, Lynchburg Grand Jury,* 563 F.2d 652 (4th Cir. 1977), in which the court affirmed a district court's order of disqualification of counsel for certain witnesses subpoenaed to testify before a grand jury. The facts of that case, however, are readily distinguishable. The two attorneys, Whitehead and Rosen, were barred from representing two witnesses in a grand jury investigation concerning interstate prostitution, where each witness had invoked the Fifth Amendment. Three of the witnesses and Attorney Whitehead were targets of the investigation and Mr. Rosen was co-counsel.

It was not until *after* the ten witnesses had invoked the Fifth Amendment, that the Government for the second time sought a court order disqualifying the two lawyers. It again informed them as well as the court of its reasons for so doing. *At the request of the witnesses,* the court examined five of them on voir dire, *in camera* and *ex parte,* and concluded that three of the five were invoking their Fifth Amendment privileges unlawfully to protect from incrimination, not themselves, but their attorney, Whitehead, and the other witnesses. These *in camera* proceedings were conducted at the request and for the benefit of the witnesses themselves, rather than at the request of the Government when the court ruled on the motion. The witnesses had filed waivers of any Sixth Amendment rights that they might have to conflict-free counsel. The Court of Appeals affirmed, however, because the waivers had been executed before the witnesses had been made aware that one of the lawyers and at least three of the witnesses themselves were targets of the grand jury investigation, and that there was thereby created a conflict of interest among them. The Court of Appeals further stated that none of the witnesses and neither of

be ineffective to compel appellant's testimony once the inculpatory nature of the information sought is made clear. Cf. *Matter of Grand Jury Empaneled January 21, 1975, supra; In re Investigation Before April 1975 Grand Jury, supra.* By granting the Government's motion to disqualify Mr. Erlbaum before a single question has been asked of appellant by the grand jury, the court is concluding that Mr. Erlbaum's representation of appellant will frustrate the work of the grand jury. It is unfairly lending the weight of the court to the Government's efforts to compel appellant's testimony, regardless of competing personal interests, through the disqualification of counsel whose advice to his clients the Government assumes it will not like.[6]

the attorneys had informed the court that each witness had been fully advised about the actual consequences of the conflict between his interest and that of the other witnesses and the one lawyer. The court, therefore, found the waivers were void. It declined to pass on whether Mr. Rosen would still have been disqualified if the waivers had been found to be valid.

Mr. Whitehead's disqualification was affirmed because of his *own* conflict of interest, as well as to avoid any appearance of unethical conduct, and to prevent a frustration of the grand jury proceeding. Mr. Rosen's disqualification was also affirmed because he would have to act against the interests of some of his clients if he sought immunity on behalf of one of them in exchange for testimony before the grand jury. That situation most closely resembles the case presently before this court. Here, however, such conflict will not arise, because the Government has already taken the initiative and informed the witness Taylor that it plans to offer him immunity from prosecution in order to secure his testimony. At this point, therefore, the record does not disclose that there is any duty owed by Mr. Erlbaum to Taylor or any of his other clients, which he has not performed.

The Government has in no way even suggested that Mr. Erlbaum may be a target of the investigation, whose self-interest in avoiding incrimination would interfere with his ability vigorously to pursue his clients' best interests; nor is there any proof or offer of proof that his representation of appellant will impair the grand jury's investigative function and deprive the public of the testimony of a witness. Cf. *United States v. Calandra,* 414 U.S. 338, 345, 94 S.Ct. 613, 38 L.Ed.2d 561 (1973).

Moreover, we decline to adopt the Fourth Circuit's position, insofar as it suggests that the proper course for the district courts to take,

■ The district court is charged with the responsibility of supervising the members of its bar, and its findings will be disturbed only upon a showing of abuse of discretion. *Allegaert v. Perot,* 563 F.2d 246, at 248 (2d Cir. 1977); *The Fund of Funds Ltd. v. Arthur Andersen & Co.,* 567 F.2d 225 (2d Cir. 1977); *NCK Org'n Ltd. v. Bregman, supra; Hull v. Celanese Corp., supra.* It is improper, however, for the court, on the basis of an *in .camera* examination of Government documents, to impose its view of an attorney's ethical responsibility in a private attorney/client arrangement where no compelling public interest has yet been shown. Disciplinary Rule 5–105(c) provides that "[a] lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."

■ When a potential or actual conflict of interest situation arises, it is the court's duty to ensure that the attorney's client, so involved, is fully aware of the nature of the conflict and understands the potential threat to the protection of his interests. Once the court is satisfied, however, that such a client knowingly and intelligently wishes to proceed with joint representation, the court's responsibility is met, and it is without power unilaterally to obstruct the choice of counsel. See *Abraham v. United States,* 549 F.2d 236 (2d Cir. 1976); *United States v. Armedo-Sarmiento,* 524 F.2d 591 (2d Cir. 1975).

In so holding, this court does not shirk its duty of requiring the maintenance of "the highest ethical standards of professional responsibility." *Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562 (2d Cir. 1973). In *Emle Industries, Inc. v. Patentex, supra; NCK Org'n v. Bregman, supra;* and *The*

*Fund of Funds, Ltd. v. Arthur Andersen & Co., supra,* attorneys had run afoul of the strictures of Canon 4 by placing themselves in a position in which the confidentiality of their relationship with former clients was threatened. In those cases the interests in jeopardy were those of the former clients who brought the motions to disqualify because the attorneys had changed sides from the former clients to the current, adverse clients; and, it was proper for the court to adjudicate the conflict in order to avoid even the appearance of impropriety on the part of counsel. Canon 9; see also, *Hull v. Celanese Corp., supra;* cf. *Allegaert v. Perot, supra.* In this case, however, the court, in accordance with Canon 5, is ostensibly concerned with appellant's interest in sound legal advice. A conflict between appellant and his associates is not inherent in their joint representation by Mr. Erlbaum. A clash of interests, if any, has been created by the Government's desire to compel the appellant to give particular testimony before the grand jury. The Government possesses the power to create such a "conflict" in all situations in which targets of a grand jury investigation or defendants at trial are represented by a single attorney. This court has on numerous occasions declined to adopt a rigid "single representation" rule in situations of actual, as well as potential, conflict, in favor of allowing a client to retain counsel of his choice with full knowledge of the potential adverse consequences of such representation. *Abraham v. United States, supra; United States v. Carrigan,* 543 F.2d 1053 (2d Cir. 1976); *United States v. Mari,* 526 F.2d 117 (2d Cir. 1975), *cert. denied,* 429 U.S. 941, 97 S.Ct. 359, 50 L.Ed.2d 311 (1976); *United States v. Armedo-Sarmiento, supra; United States v. DeBerry,* 487 F.2d 448 (2d Cir. 1973); *United States v. Alberti,* 470 F.2d 878 (2d Cir. 1972), *cert. denied,* 411 U.S. 919, 93 S.Ct. 1557, 36 L.Ed.2d 311 (1973); *United States*

---

when faced with witnesses whose recalcitrance may impede the proper functioning of a grand jury investigation, is to disqualify chosen counsel through the exercise of their supervisory power over the proceedings. This court has observed that the "accommodation between

the right of the Government to compel testimony, on the one hand, and the constitutional privilege to remain silent, on the other, is the immunity statute." *United States v. Tramunti,* 500 F.2d 1334, 1342 (2d Cir.), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974).

**1192**

*v. Sheiner,* 410 F.2d 337 (2d Cir.), *cert. denied, Piacentile v. United States,* 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969). On the facts of this case, we continue to adhere to that position.

 The district court should require the grand jury to proceed with its investigation in the usual course by summoning appellant to testify. If in the course of doing so the appellant invokes his Fifth Amendment privilege, the Government can offer him immunity to compel his testimony. If appellant decides that it is in his best interest to remain silent,·face confinement for contempt and possibly a subsequent indictment, rather than become a witness for the Government, and he knowingly and intelligently wishes to continue with Mr. Erlbaum as his counsel, the court must accept this position.

The district court has sufficient power at its disposal to compel a recalcitrant grand jury witness[7] to obey its order to testify; and the Government is authorized to prosecute persons who seek to obstruct justice by corruptly influencing a grand jury witness[8] or by suborning perjury.[9] The principle that an attorney should withdraw from the representation of multiple clients, where his ability to act for one is adversely affected by his representation of others, evolved from a concern for each client's interest in receiving independent professional advice. See Canon 5, Code of Professional Responsibility, American Bar Association (1975). The Government, for its part, should rely on the tools with which it has been provided by Congress—immunity, contempt, and prosecution for obstruction of justice and perjury.[10]

---

**7.** 28 U.S.C. § 1826(a) states that,

"Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such times as the witness is willing to give such testimony or provide such information. No period of confinement shall exceed the life of—
 (1) the court proceeding, or
 (2) the term of the grand jury, including extensions, before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months."

**8.** 18 U.S.C. § 1503 provides, in part, that:

"Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States magistrate or other committing magistrate, . . or corruptly or by threats or force, or by threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

This statute has been held to encompass efforts corruptly to persuade a grand jury witness to remain silent and invoke the Fifth Amendment under all circumstances in order to conceal evidence of criminal activity *United States v. Fayer,* 523 F.2d 661 (2d Cir. 1975); *United States v. Cioffi,* 493 F.2d 1111 (2d Cir.), *cert. denied,* 419 U.S. 917, 95 S.Ct. 195, 42 L.Ed.2d 155 (1974); *Cole v. United States,* 329 F.2d 437 (9th Cir.), *cert. denied,* 377 U.S. 954, 84 S.Ct. 1630, 12 L.Ed.2d 497 (1964); see also, *United States v. Schwartzbaum,* 527 F.2d 249 (2d Cir. 1975), *cert. denied,* 424 U.S. 942, 96 S.Ct. 1410, 47 L.Ed.2d 348 (1976); *United States v. Campanale,* 518 F.2d 352 (9th Cir. 1975), *cert. denied, Grancich v. United States,* 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976); *United States v. Marionneaux,* 514 F.2d 1244 (5th Cir. 1975).

**9.** 18 U.S.C. § 1622 states,

"Whoever procures another to commit any perjury is guilty of subordination of perjury, and shall be fined not more than $2,000 or imprisoned not more than five years, or both."

**10.** We have given consideration to Chief Judge Kaufman's concurring opinion in which he expresses the desirability of deciding this appeal solely on the ground that the Government's motion was premature, and that the discussion of the due process issue, implicit in the *in camera* proceeding is, in effect, the rendering of an advisory opinion. In view of the fact that the issues of the propriety of the *in camera* proceedings and the right to counsel of one's choice were as much a part of the case as the question of immaturity, and were fully argued by the parties in their briefs and at oral argument, we remain of the view that in the circumstances of this case the parties are entitled to an answer.

We set aside the order of the district court and direct it to dissolve its injunction and dismiss the motion.

KAUFMAN, Chief Judge (concurring):

I wholeheartedly concur in my brother Anderson's view that the Government's motion to disqualify Mr. Erlbaum, and the court's order prohibiting the appellant from retaining his services, are premature. In my view, it is highly significant that the appellant has not yet been offered immunity in exchange for his testimony pursuant to 18 U.S.C. § 6002. My brother Anderson appropriately indicates it is only when this stage in the grand jury proceedings has been reached, that the issue of Mr. Erlbaum's conflict of interest will be ripe for adjudication. See *Matter of Grand Jury Empaneled January 21, 1975,* 536 F.2d 1009 (3d Cir. 1976); *In re Investigation Before April 1975 Grand Jury,* 174 U.S.App.D.C. 268, 531 F.2d 600 (1976).

I do not, however, join in Judge Anderson's excellent homily on prosecutorial secrecy and its dangers. My reason is simple. Where an issue is not ripe for review, we should not prejudice cases yet to be brought. We do not know what a new complaint, if and when brought, might allege: the factual averments may be quite different and will surely involve supervening circumstances. Hence, while my brother's zeal to right the wrongs of *in camera* proceedings is entirely commendable, I believe it would be the better part of wisdom not to offer his advisory opinion on an issue of such great importance.