## In re COORDINATED PRETRIAL PROCEEDINGS IN PETROLEUM PRODUCTS ANTITRUST LITIGATION.

### M.D.L. No. 150 WPG.

United States District Court,
C. D. California.

Nov. 10, 1980.

---

Robert K. Corbin, Atty. Gen., Kenneth R. Reed, Chief Counsel, Antitrust Section, David B. Goldstein, Asst. Atty. Gen., Antitrust Div., Phoenix, Ariz., and Furth,

Fahrner & Wong, Kirk A. McKinney, Richard S. E. Johns, San Francisco, Cal., for State of Arizona.

George Deukmejian, Atty. Gen., by Michael Ivan Spiegel, Wayne M. Liao, William S. Clark, Deputy Attys. Gen., Dept. of Justice, State of California, San Francisco, Cal., and Gary James, Deputy Atty. Gen., Dept. of Justice, State of California, Los Angeles, Cal., for State of California.

Robert L. Shevin, Atty. Gen., by Bill L. Bryant, Jr., Jerome W. Hoffman, Asst. Attys. Gen., Dept. of Legal Affairs, Tallahassee, Fla., Jones & Dunne, Stephen L. Dunne, San Diego, Cal., for State of Florida.

James Kirkham Johns, Chief Counsel, Antitrust Div., Salem, Or., for State of Oregon.

Slade Gorton, Atty. Gen. by Thomas L. Boeder, Senior Asst. Atty. Gen., John R. Ellis, Jay Uchida, Asst. Attys. Gen., Seattle, Wash., for State of Washington.

Blecher, Collins & Hoecker, Maxwell M. Blecher, Gary W. Hoecker, Martin J. Trupiano, Brian James Hennigan, Candace E. Carlo, Los Angeles, Cal., for City of Long Beach.

McCutchen, Doyle, Brown & Enersen, Stanton R. Koppel, San Francisco, Cal., and Milbank, Tweed, Hadley & McCloy, Adlai S. Hardin, Jr., Sharon W. Lindsay, Edward I. Handelman, New York City, for defendant Amerada Hess Corp.

Hughes, Hubbard & Reed, Otis Pratt Pearsall, John A. Donovan, Philip H. Curtis, Melinda J. Roberts, New York City, and Donald A. Bright, Associate Gen. Counsel, Howard S. Fredman, Barbara A. Hindin, Thomas H. Reilly, Los Angeles, Cal., and Hughes, Hubbard & Reed, Ronald C. Redcay, Paul M. Smith, Los Angeles, Cal., for defendant Atlantic Richfield Co.

Procopio, Cory, Hargreaves & Savitch, Robert G. Russell, Jr., Paul B. Wells, San Diego, Cal., and Russell H. Smith, Darrell A. Kelsey, Tulsa, Okl., for Cities Service Company-Cities Service Oil Co.

Latham & Watkins, Max Gillam, Fredric J. Zepp, Jon D. Demorest, Carl E. Witschy, Los Angeles, Cal., and Tom Burton, Bruce Merrill, Houston, Tex., for Conoco, Inc.

McCutchen, Black, Verleger & Shea, Philip A. Verleger, David A. Destino, Lisa C. Woods, John C. Mueller, Gregory R. McClintock, Michael A. Morris, Los Angeles, Cal., and C. Kenneth Roberts, John Chiles, James A. Drexler, George F. Safi, Scott Lansdown, Houston, Tex., and Rosemary Stein, New York City, for defendant Exxon Corp.

Dechert, Price & Rhoads, Christopher J. Collins, Robert A. Cohen, New York City, and Philip J. Englund, Los Angeles, Cal., for defendant Getty Oil Co.

John E. Bailey, Harry P. Davis, Jr., Joan B. Oxford, Houston, Tex., and Anderson, Granger & Nagels, Kenton C. Granger, Overland Park, Kan., and George E. Jarvis, Jr., Los Angeles, Cal., for defendant Gulf Oil Company—U. S.

Donovan, Leisure, Newton & Leisure, Washington, D. C., Andrew J. Kilcarr, Charles F. Rice, Thomas Trowbridge, Donald L. Clarke, New York City, Vincent Tricarrico, Maureen O'Bryon, Washington, D. C., Daniel Bukovac, New York City, and Sheppard, Mullin, Richter & Hampton, Don T. Hibner, Jr., Charles W. McCoy, Los Angeles, Cal., Charles B. Straus, III, New York City, for defendant Mobil Oil Corp.

Sullivan & Cromwell, Richard Menaker, John Dickey, New York City, and Adams, Duque & Hazeltine, John H. Brinsley, Robert M. Mitchell, Catherine Hunt Ruddy, Los Angeles, Cal., and Phillips Law Department, Neal Lehman, Bartlesville, Okl., for Phillips Petroleum Co.

Kadison, Pfaelzer, Woodard, Quinn & Rossi, Lawrence A. Cox, Los Angeles, Cal., for defendant Powerine Oil.

Pillsbury, Madison & Sutro, Richard J. MacLaury, Anthony P. Brown, Philip L. Judson, James L. Wanvig, Mary B. Cranston, Robert P. Taylor, Robert A. Mittelstaedt, W. Jeffrey Schmidt, David C. Stegall, Mary Kay Sheridan, San Francisco, Cal., for Standard Oil Company of California.

M. J. Keating, Chicago, Ill., and Paul, Hastings, Janofsky & Walker, Oliver F. Green, Jr., Robert S. Span, Los Angeles, Cal., for Standard Oil Company (Indiana).

J. King Rosendale, Cleveland, Ohio, and Payne, Hilgendorff, Morehouse & Shafer, Paul C. Shafer, Jr., Fairfield, Conn., for Standard Oil Company (Ohio).

Robert M. Dubbs, Andrew Derman, Radnor, Pa., and Pepper, Hamilton & Sheefs, John G. Harkins, Joseph Zulli, Patricia Burrall, Philadelphia, Pa., for Sun Oil Co.

R. D. Wilson, White Plains, N. Y., and Kaye, Scholer, Fierman, Hays & Handler, Barry Willner, New York City, and Sullivan, Jones & Archer, Robert L. Simmons, Richard W. Page, Christopher Q. Britton, William D. Hughes, San Diego, Cal., and Leslie C. Randall, Los Angeles, Cal., for Texaco, Inc.

Brobeck, Phleger & Harrison, John Sparks, William J. "Zak" Taylor, Paul T. Dye, San Francisco, Cal., and Harold E. Zahner, Los Angeles, Cal., for Union Oil Co.

## MEMORANDUM OF DECISION

WILLIAM P. GRAY, District Judge.

In these cases, which charge major oil companies with having conspired to violate the antitrust laws of the United States, the plaintiffs (Attorneys General of several states) currently are in process of noticing the depositions of employees and retired employees of the defendant corporations. It often happens that when such a prospective deponent receives a subpoena for his deposition, or otherwise learns that he is a target of inquiry, he, understandably, contacts an appropriate representative of his employer (or former employer) and inquires as to what the dispute is all about and where he fits into the picture. He promptly is referred to the firm of attorneys that are representing the company in these actions and, from the first interview, it is mutually and tacitly inferred that an attorney–client relationship has been established, at no cost to him, which carries through the preparation for the deposition and its accomplishment.

The plaintiffs contend that they are prejudiced by such a process and have moved that counsel in these actions be precluded from simultaneously representing a party and an individual non–party deponent. This court agrees with the plaintiffs, for reasons herein set forth, and will issue an order accordingly.

█ The employees and former employees that the plaintiffs seek to depose are not defendants, nor are they, through any stretch of imagination, likely to become defendants. They presumably are independent witnesses whose duty and only appropriate objective is to tell "the truth, the whole truth, and nothing but the truth." Such goals, as defense counsel point out, are basically in harmony with their own, as respected members of the profession and officers of the court. "Basically," but not quite. Unlike the independent witnesses, counsel are not supposed to be disinterested. Their duty is to cause the record of a deposition or of a trial to be just as favorable to their clients as they can. I do not mean to imply that the interests of the witness and of the attorney are likely to be out of harmony with each other or that counsel would be willing to suborn perjury. However, "the whole truth" often becomes a matter of subjective judgment, and a factual conclusion that is deeply held by a party and its counsel may diverge substantially from the honest recollection of a perceptive witness. If such a witness is represented at a deposition by counsel for a defendant company, the possibility cannot be discounted that the attorney may become faced with the need to impeach the testimony of his own client.

I have little doubt that if a clear conflict of this nature were to be perceived in advance, counsel immediately would disqualify himself from further representation of the witness. It also is true that, under the Code of Professional Responsibility of the American Bar Association,

"... a lawyer may represent multiple clients if it is obvious that he can adequately represent the interests of each

and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each." Section DR 5–105(C).

In all likelihood, each of the employee or former employee witnesses that the plaintiffs may want to depose would consent gladly to the dual representation, in order to have the services of a knowledgeable attorney without cost to him. The alternative of appearing without counsel or of using his own funds to employ an attorney without previous experience in this litigation, is hardly of comparable attraction.

The defendants contend that once the witness has consented to the dual representation after full disclosure of a potential or actual conflict has been made, that is the end of the matter. They refer to *In re Taylor*, 567 F.2d 1183, 1191 (2d Cir. 1977), in support of the proposition that under these circumstances the court is " . . . without power unilaterally to obstruct the choice of counsel."

Thus far, the discussion in this memorandum has focused upon the application of Canon 5 of the Code of Professional Responsibility.[1] There, the concern is limited to the interests of the respective clients that are the subjects of dual representation. In such context, I believe it correct to say that if the clients consent after full disclosure, neither an opposing party nor the court is in position to complain. *Melamed v. ITT Continental Baking Co.*, 592 F.2d 290 (6th Cir. 1979).

However, in the present situation, there are troublesome ethical considerations that are not limited to the protection of the interests of a prospective witness or of a defendant corporation.

### A. The Determination Of The Need For Counsel.

■ From the papers submitted and the comments made at the hearing on this issue, I have considerable doubt that the pro-

spective deponents have any idea that they need an attorney when, upon being advised that their deposition is or may be sought, they contact a defendant employer or former employer. The likelihood is that they are offered counsel, either expressly or implicitly in being referred to the law firm representing such defendant. Thus, without any independent exercise of judgment on his part, a prospective witness finds himself under the guidance and protection of an attorney. For reasons discussed below, it is obvious that counsel for the defendant corporation is glad to have the attorney–client relationship established. But such desire scarcely could be in harmony with the requirements of "full disclosure" of any potential conflict of interest, e. g., unbiased testimony as opposed to defense partisanship.

The American Bar Association Committee On Ethics And Professional Responsibility was asked the following question:

"In a civil suit, where one party (defendant) gives notice of taking depositions of independent witnesses (former employees of plaintiff corporation), is it proper for the attorney for the other party (plaintiff) to invite the noticed witnesses to engage him as attorney to represent them during their depositions, concurrently with his serving as attorney for the other party (plaintiff)?" Informal Ethics Opinions, page 437, Informal Decision No. 828, March 3, 1965.

The answer was a categorical "No," because of the problem of "solicitation". The factual situation referred to is not fully synonymous with the one here concerned, but it does have troublesome relevance.

### B. Pre-Deposition Insulation.

■ Under the circumstances here discussed, plaintiffs' counsel who contemplate deposing a presumably independent prospective witness suddenly find that neither they nor their representatives may properly seek to interview him without the presence,

---

1. Canon 5 asserts that "a lawyer should exercise independent professional judgment on behalf of a client."

or at least the approval, of opposing counsel, who suddenly have become the attorneys for the witness. Thus, from a practical standpoint, the plaintiffs' counsel are unable to contact the potential witness on an informal basis in order to ascertain the nature and scope of his relevant knowledge and to assess the desirability of deposing him.

At the hearing concerning this issue, defense counsel asserted that " . . . there is no right to interview any witness unless he consents, and the preference of some witnesses not to be interviewed without counsel of their choice or indeed at all is certainly understandable and cannot be said to create, as a matter of law, any kind of unfairness toward the plaintiff." (Rep.Tr. page 29.) It of course is true that "there is no right to interview any witness [informally] unless he consents." But the problem here is that the plaintiffs' counsel cannot even seek the consent of a prospective witness because intervention by the defendant and its counsel has insulated him against any such contact. In the meantime, defense counsel have full opportunity to "prepare" their "client" for his deposition.

### C. *Preparation For Deposition.*

■ It readily may be assumed that an employee or former employee of a defendant will welcome orientation and guidance from the latter upon learning that he may be called as a witness. Several years have passed since the pertinent events occurred, and it is fully appropriate for defense counsel to refresh the recollection of the witness as to the facts, familiarize him with the relevant documents, and cause him to understand fully the company's views and attitudes concerning the litigation. But such orientation can just as readily be provided in the absence of an attorney-client relationship, counsel for either side being free to confer with a prospective witness to whatever extent the latter is agreeable. The only difference is that when such relationship exists, opposing counsel are prevented from inquiring into what went on at any such orientation session. Defense counsel insist that it would be "monstrous" not to preserve the attorney-client privilege against disclosure under such circumstances.

I am unable to agree. The following observation is believed to be very perceptive and pertinent.

"The damage to testimony inflicted by the preparation of witnesses is very serious. Parties can hardly be expected to interview the potential witnesses in relatively detached ways that minimize the danger of interrogation to memory images. During the sessions devoted to 'coaching,' the future witness is likely to try to adapt himself to expectations mirrored in the interviewer's one-sided attitude. As a consequence, gaps in his memory may even unconsciously be filled out by what he thinks accords with the lawyer's expectations and are in tune with his thesis. Later, in court, these additions to memory images may appear to the witness himself as accurate reproductions of his original perceptions." Damaska, Presentation Of Evidence And Factfinding Precision, 123 U.Pa.L.Rev. 1083, 1094 (1975).

The witnesses with whom we are concerned may be partial to their employers, and some of them may be people through whom a defendant has acted in ways significant to this litigation. However, it must be remembered that they are not parties, and it is in the interests of justice that both sides be entitled to their testimony and be able to make full inquiry into any influences that may have affected such testimony. I think it inappropriate that an attorney-client relationship be established between such a witness and a party, thus frustrating such inquiry by the opposing side.

### D. *Instruction Not To Answer.*

■ In the course of a deposition, once it occurs, counsel for a witness can find many ways of protecting his client through objections, requests for clarification, instructing the witness not to answer, etc. Such interjections always are disruptive of the train of thought of the interrogator. Sometimes they are appropriate for the protection of

the witness and his testimony; occasionally they are unnecessary for this purpose but nonetheless serve the interests of the interrogator's adversary. If the latter is also counsel for the witness and instructs him not to answer, a question necessarily arises as to which client's interests he is serving. If his actions stem from any goal other than the protection of the witness, he has no right to give such an instruction. Even though, in due course, the court may resolve the issue and impose sanctions when appropriate, it is believed to be unfair to the interrogator for his opponent to have such authority over a non-party witness.

This court does not mean to suggest that counsel for any of the defendants intentionally have ignored an actual conflict in their representation of any witnesses or that they otherwise have engaged knowingly in any impropriety. However, for the reasons above stated, this court concludes that the establishment by counsel for a party in this litigation of an attorney-client relationship with a non-party witness creates a potential conflict that other parties readily could infer to be prejudicial. Such a relationship is not in harmony with Canon 9 of the Code of Professional Responsibility, which states that "a lawyer should avoid even the appearance of professional impropriety."

Defense counsel suggest that there is no judicial precedent for such a ruling and that it would be contrary to the law of the Ninth Circuit, citing *Continental Oil Co. v. United States*, 330 F.2d 347 (9th Cir. 1964). That decision is hardly definitive authority, inasmuch as the propriety of the multiple representation there involved was neither challenged nor considered in any manner.

On the other hand, this court finds encouragement for its views in an opinion by the late Judge Snyder in the case of *United States of America v. RMI*, 467 F.Supp. 915, 922 (W.D.Pa.1978). This was a criminal prosecution in which the court granted the Government's motion to disqualify counsel for corporate defendants from representing employees of such corporations that currently were or might subsequently be subpoenaed as witnesses for the Government.

In the course of the opinion, the judge referred to the obligation of an attorney, under Canon 9, to "avoid even the appearance of professional impropriety," and then stated:

> "None of the disciplinary rules under Canon 9 deal specifically with the situation before the Court at this time, but the representation of a defendant in a criminal case and of a government witness who is also the defendant's employee could give such an appearance and is sufficient in itself to disqualify counsel from further representation of the witnesses."

A similar view is expressed in Opinion No. 290, rendered on April 27, 1973, by the Committee on Professional Ethics of the New York State Bar Association:

> "The dual representation of a defendant and a witness in a criminal proceeding also appears to conflict with the traditional rules of our legal system in which the lawyer acts as an advocate for one party, and the witness, and his attorney, perform a different function. See, EC 5–9. To confuse the attorney's role by the representation of both a defendant and a witness in the same proceeding would present an appearance of impropriety. This a lawyer should avoid. Canon 9."

Also, in *United States ex rel. Hart v. Davenport*, 478 F.2d 203 (3d Cir. 1973), the opinion quoted with approval a portion of the opinion in *In re Abrams*, 266 A.2d 275, 278 (N.J.1970):

> "It is inherently wrong to represent both the employer and the employee if the employee's interest may, and the public interest will, be advanced by the employee's disclosure of his employer's criminal conduct." 478 F.2d at 209.

It is recognized that these authorities were concerned with representation of defendants in criminal proceedings, with all of the Sixth Amendment implications. Nonetheless, the above quoted observations are believed to have substantial application here. Serious antitrust violations of great national concern are charged. At this stage of the proceedings, I do not know what the

facts are, but if there have been serious antitrust violations on the part of a defendant oil company, whether of a criminal nature or not, it is beyond doubt that "the public interest will . . . be advanced by the employee's disclosure . . ." thereof. In assessing the public interest, it should be remembered that these actions include damage claims brought by the plaintiff Attorneys General as parens patriae for their citizens as purchasers of petroleum products.

To the extent that this decision does go beyond established precedent, it is nonetheless adhered to because I believe it to be in accord with the interests of justice. To the extent that further support is needed, I rely upon the assertion in *Hull v. Celanese Corporation*, 513 F.2d 568, 571 (2d Cir. 1975), that "[I]n the disqualification situation, any doubt is to be resolved in favor of disqualification."

Defense counsel have reminded the court that "Privileged communications between counsel and corporate employees at all levels are vital to the task of advising the corporation on compliance with the antitrust laws." (Supplemental Memorandum of Socal, page 7.) This court agrees, and nothing in the order here rendered is intended in any way to affect whatever privilege may otherwise exist between counsel for a company and an employee as to advice given or information exchanged with respect to current operations of the company. Problems concerning the existence or extent of such a privilege may or may not arise in the course of the testimony of an employee or former employee. Those matters are not involved in this order, which only precludes such counsel from now representing such a witness in preparing for and giving testimony in this litigation.