**UNITED STATES of America, Plaintiff,**

**v.**

**Arthur SULLIVAN and Shawn Sweeney, Defendants.**

**No. 81 Cr. 0771 (JES).**

United States District Court, S. D. New York.

Jan. 19, 1982.

John S. Martin, Jr., U. S. Atty., S. D. New York, New York City, for plaintiff; Janette Patterson, Asst. U. S. Atty., New York City, of counsel.

Thomas I. Atkins, N.A.A.C.P., Sp. Contribution Fund, New York City, for defendant Sullivan; George E. Hairston, New York City, of counsel.

James I. Meyerson, New York City, for defendant Sweeney.

## OPINION

SPRIZZO, District Judge:

In this action, defendant Arthur Sullivan is charged with attempting to escape from the Metropolitan Correctional Center ("MCC"). Defendant Shawn Sweeney is charged with aiding and assisting the attempted escape. The facts, as alleged by the government, are as follows: Ms. Sweeney arrived at the MCC to visit Mr. Sullivan. It is claimed that she entered the facility alone, although she is alleged to have registered as two visitors, herself and one Jose Barrera. When an individual resembling Mr. Sullivan was discovered in street clothes just prior to Ms. Sweeney's departure, Ms. Sweeney is said to have told a prison guard that the individual had accompanied her into the prison. The individual, alleged to have been Mr. Sullivan, presented identification in the name of Jose Barrera.

At a pre-trial hearing on December 7, 1981, attorney George E. Hairston, Assistant General Counsel of the NAACP, appeared on behalf of both defendants and conveyed to the Court his clients' desire that he jointly represent them, as well as his willingness to do so. Mr. Hairston indicated that he had discussed the dangers inherent in joint representation with both his clients. The Court engaged in a colloquy with defendants, advising them of their Sixth Amendment rights to effective assistance of counsel and separate representation, and apprising them of a variety of situations in which prejudicial conflicts could arise. Both defendants indicated that, although they knew of and understood the possible conflicts, they nonetheless desired to be jointly represented. The United States moved for an order directing the defendants to retain separate counsel on the basis that defendants could not knowingly and intelligently waive their Sixth Amendment rights. The Court thereupon instructed the government and Mr. Hairston to submit briefs on the motion to dis-

qualify. A hearing was held on the motion on December 10, 1981.[1]

The issues presented by the motion to direct defendants to retain separate counsel are: (1) whether there is good cause to believe that a prejudicial conflict of interest will arise; and (2) whether defendants have made a knowing and intelligent waiver of their Sixth Amendment rights.

In accordance with the law of this Circuit and Rule 44(c) of the Fed.R.Cr.P.,[2] this Court has a duty to ascertain whether any actual or potential conflict is prejudicial. *In re Taylor*, 567 F.2d 1183, 1186 (2d Cir. 1977); *Abraham v. United States*, 549 F.2d 236, 239 (2d Cir. 1977) (per curiam); *United States v. Carrigan*, 543 F.2d 1053, 1055 (2d Cir. 1976). In this connection, the government argues that, given the nature of the charges in this case and the evidence in support thereof, such conflicts are inescapable. Defendants, on the other hand, maintain that, since they are charged with distinctly different criminal acts as to which the evidence is discreet and severable, the potential for a prejudicial conflict is minimal. Moreover, Mr. Hairston has represented that, after fully considering the evidence disclosed and the information received from the defendants, he believes joint representation to be non-prejudicial and without great potential for conflict at trial.

This Court is unpersuaded by defendants' contention that the potential for a prejudi-

cial conflict is minimal. It appears to this Court, and this Court finds, that prejudicial conflicts of interest are likely to arise throughout the joint representation including, but not limited to, possible plea negotiations, the possibility of cooperation with the government, the cross-examination of witnesses and in summations.[3]

Defendants, relying on *In re Taylor*, 567 F.2d 1183, nevertheless argue that they have knowingly and intelligently waived their Sixth Amendment rights to effective assistance of counsel. The government contends that neither defendant is capable of making such a waiver because (1) the possibility of conflict is so strong; (2) the Court is not in a position to inform defendants of the foreseeable prejudice that joint representation may involve; and (3) defendants are, in any event, unable to make knowing and intelligent waivers of their right to effective assistance of counsel in view of their personal relationship. The government argues that defendant Sweeney is particularly unable to waive in view of her age, relative lack of experience in the criminal justice system and her alleged susceptibility to Mr. Sullivan's influence.[4]

■ While the right to effective assistance of counsel may be waived, *In re Taylor*, 567 F.2d at 1186; *see Abraham v. United States*, 549 F.2d 236, waivers of constitutional rights cannot be lightly presumed, *Brookhart v. Janis*, 384 U.S. 1, 4, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314 (1966). The

---

1. Mr. Hairston appeared on behalf of both defendants on December 7th and December 10th. Leonard Joy, Esq., who had been provisionally appointed to represent Ms. Sweeney pending resolution of the question of joint representation, also appeared on behalf of Ms. Sweeney on both occasions.

2. Fed.R.Cr.P. 44(c), as amended, effective December 1, 1980, provides: Joint Representation. Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to the effective assistance of counsel, including

separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

3. At the *in camera* hearing conducted on December 10, 1981, Mr. Hairston suggested to the Court that, while the evidence against Ms. Sweeney is circumstantial, the evidence against Mr. Sullivan is stronger. Joint representation would clearly restrict Mr. Hairston's ability to argue these evidentiary differences.

4. The government bases its contention that Ms. Sweeney is susceptible to Mr. Sullivan's influence on its observations of the defendants during the course of the proceedings.

Court, therefore, has a duty to conduct a scrupulous inquiry to determine whether a purported waiver is given knowingly and intelligently. In discharge of that duty, this Court heard argument by counsel, engaged in a colloquy with defendants at the hearing on December 7, 1981 and conducted a further inquiry into defendants' education and experience at the *in camera* hearing conducted on December 10, 1981.

■ This Court is not persuaded that the personal relationship between the defendants in itself precludes the capacity to make an effective waiver. Nor does the Court find it dispositive that defendant Sweeney has had less experience in the criminal justice system, although that circumstance is clearly relevant. However, giving due regard to all the facts and circumstances elicited thus far, including that obtained at the *in camera* inquiry, and on the basis of this Court's opportunity to assess the demeanor of the defendants, the Court finds that a knowing and intelligent waiver cannot be made on the facts of this case because neither defendant possesses the educational background, experience, knowledge or legal sophistication to fully understand and appreciate the adverse impact upon their Sixth Amendment rights that may result from joint representation, especially since the precise issues of conflict are presently unknown. *See United States v. Dolan*, 570 F.2d 1177, 1181 (3d Cir. 1978). Indeed, Judge Lumbard states, in his concurring opinion in *United States v. Carrigan*, 543 F.2d 1053 at 1058:

> It would be a rare defendant who could intelligently decide whether his interests will be properly served by counsel who also represents another defendant. However parallel his interests seem to be with those of a co-defendant the course of events in the prosecution of the case, the taking of a guilty plea, or the conduct of the trial may radically change the situa-

tion so as to impair the ability of counsel to represent the defendant most effectively.

■ While this Court is mindful that it should not lightly interfere with a defendant's choice of counsel, there is no Sixth Amendment right to joint representation, *Abraham v. United States*, 549 F.2d at 239, and separate representation may be ordered in an appropriate case. *United States v. Helton*, 471 F.Supp. 397 (S.D.N.Y.1979). In view of the Court's finding that neither defendant can make a meaningful waiver, this Court concludes that separate representation is necessary to protect defendants' Sixth Amendment rights to effective assistance of counsel.

Defendants' desire to make a joint and common defense will not be undermined by the appointment of separate attorneys for each defendant. Whether defendants are represented jointly or separately, they may confer and may instruct their counsel to confer with respect to their desire to have a joint defense. Indeed, the Court so advised both defendants at the *in camera* hearing on December 10th. In view of the foregoing, this Court can see no conceivable prejudice to defendants arising from the appointment of separate counsel.

Finally, separate representation here would facilitate the fair and expeditious prosecution of this trial and the sound and efficient administration of justice.[5] *Cf. United States v. Ostrer*, 597 F.2d 337 (2d Cir. 1979); *United States v. Salinas*, 618 F.2d 1092 (5th Cir.) (per curiam), *cert. denied*, 449 U.S. 961, 101 S.Ct. 374, 66 L.Ed.2d 228 (1980). On the facts of this case, the Court could not require defendants to continue with joint representation in the face of a clear conflict situation if it arose, and it would be impossible to compel Mr. Hairston to represent both defendants under such

---

**5.** The Court notes that cases in this and other circuits have manifested a growing recognition of the need for separate representation in criminal cases. At least one circuit has adopted a *per se* rule requiring that, at least initially, separate counsel be appointed for each co-de-

fendant in a criminal case. *Ford v. United States*, 379 F.2d 123, 125–26 (D.C.Cir.1967). In the absence of direction from the Second Circuit, this Court is unwilling to impose such a rule.

circumstances.[6] This Court and the government are not required to proceed with a trial which may have to be aborted if and when presently unforeseen conflicts arise.

---

**6.** The Code of Professional Responsibility, Disciplinary Rule 5–105(B) provides:

A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C).

Disciplinary Rule 5–105(C) provides:

In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each (emphasis supplied).