**Paul MANGANELLA**

v.

**Thomas KEYES, Jr., et al.**

**Civ. No. N–84–13.**

United States District Court,
D. Connecticut.

July 5, 1985.

---

Keith Bradoc Gallant, Peter F. Culver, New Haven, Conn., for plaintiff.

Hugh F. Keefe, New Haven, Conn., for defendants.

## RULING ON PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL

ELLEN B. BURNS, District Judge.

The events giving rise to this suit, brought under 42 U.S.C. § 1983 and Connecticut state law, occurred on February 1, 1983, at a roller skating rink in the Town of East Haven. Plaintiff, Paul Manganella, alleges that defendant police officers, Thomas Keyes, Jr. and Thomas Dacosta "acting within the scope of their employment" and "under color of their authority as police officers and as employees of the defendant Town of East Haven," beat him and subsequently unlawfully arrested him. Plaintiff sues Keyes and DaCosta in their individual and official capacities and also sues the Town of East Haven (the Town). All the defendants in this action are represented by the same attorney.

Plaintiff has moved to disqualify defense counsel from continued joint representation claiming an inherent conflict of interest between the defense of the police officers in their individual capacities and the defense of the municipality. The basis of plaintiff's motion is *Dunton v. County of Suffolk*, 729 F.2d 903 (2d Cir.1984) in which the court ordered disqualification of the

County Attorney, who acted as defense counsel for both the police officers and their county employer, after actual conflict surfaced at trial. Plaintiff asserts that such multiple representation violates the Code of Professional Responsibility: Canon 5, requiring an attorney to exercise independent judgment on behalf of a client; Canon 4, requiring an attorney to preserve the confidences of a client; and Canon 9, requiring an attorney to avoid even the appearance of impropriety.

For reasons set forth below, the motion to disqualify is granted unless the Town complies with the requirements of this ruling within thirty days. To protect the interests of defendant police officers jointly represented with their municipal employer, the municipality shall provide the court with a waiver of its right to reimbursement for the costs of the defense under Conn. Gen.Stat. § 7–101a.[1] In addition, the attorney for the joint defendants shall submit affidavits of the defendant police officers that they have been given notice of the potential conflict arising from the joint representation and that they have elected to retain joint representation, thereby making an informed waiver of their right to separate counsel.

## I. Potential Conflict of Interest

■ An inherent conflict of interest arises in a § 1983 action when co-defendants in a suit are a local government and police officers or other employees in their individual capacity, as differing theories of liability and differing defenses are applicable to each defendant. In *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611, the Supreme Court held that "when execution of a government's policy or local custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury [on a plaintiff] ... the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2038. Consequently, to avoid liability, the municipality must show that the employee acted outside the scope of his duties, and thereby beyond the scope of municipal policy. But the employee, if he is to avoid liability, must show that his actions were reasonably within the umbrella of his official duties. *Dunton v. County of Suffolk,* 729 F.2d 903, 907 (2d Cir.1984).

■ Furthermore, although § 1983 does not expressly incorporate any common law immunities, the Supreme Court has "found that [in some instances] a tradition of immunity was so firmly rooted in the common law and was supported by such strong policy reasons that 'Congress would have specifically so provided had it wished to abolish the doctrine.'" *Owen v. City of Independence,* 445 U.S. 622, 637, 100 S.Ct. 1398, 1408, 63 L.Ed.2d 673 (1980) (quoting *Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967)). Among the traditional immunities is that of police officers who, when acting within the scope of their duties, "enjoy a 'good faith and probable cause' defense to § 1983 suits similar to that which existed in false arrest actions at common law." *Owen, supra* 445 U.S. at 637, 100 S.Ct. at 1408. By contrast, neither a tradition of immunity nor policy considerations justify a qualified immunity for municipalities and local governments under § 1983. Moreover, the good faith of its employees cannot be adopted by a governmental entity as a defense to a § 1983 action. *Id.* at 638, 100 S.Ct. at 1409. Consequently, a police officer who successfully defends a § 1983 action by asserting good faith immunity may leave the municipality,

---

1. In the instant case the defendants have filed a joint answer in which they admit that the police officers were acting within the scope of their duties. Had such an admission not been made, an irreconcilable conflict may exist that would preclude joint representation. *See* Conn.Gen. Stat. § 7–101a requiring the municipality to provide representation and reimbursement to mu-

nicipal officers for acts taken within the scope of their duties. Had such an admission not been made, the municipality's interest would be to prove that the police officers were not acting within the scope of their duties, while the police officers' interest would be to prove that they were so acting.

which does not have such a defense available, wholly liable.[2]

The attorney representing both the police officer and the municipality is faced with two opposing defenses of his clients. On behalf of the police officer he may be required to argue that his client was performing his duties in accordance with official policy. At the least, the success of this defense will lead to joint liability with the municipality, and may result in sole liability of the municipality if the officer is found to be protected by qualified immunity. However, on behalf of the municipality, the attorney may be required to argue that the officer's actions were violative of municipal policy or custom, potentially resulting in the officer's exclusive liability.

In Connecticut this potential conflict is somewhat reduced by statute. Conn.Gen. Stat. § 7–101a requires that a municipality "protect and save harmless any municipal officer ... from financial loss or expense ... arising out of any claim, demand, suit, or judgment...." This protection extends to negligent as well as wanton, willful, malicious or *ultra vires* acts. *See* Conn. Gen.Stat. § 7–101a(b). As long as the municipality ultimately is liable for any damages, whether imposed against the officer or the municipality, the conflict of interest is greatly diminished. By virtue of the statute, the financial interests of the parties are no longer in conflict and the only remaining conflict is the stigma associated with liability. This relatively minor conflict may be resolved by the informed consent of the parties.

Two difficulties remain, however, in the application of § 7–101a. First, the municipality is only liable for actions of the officer "in the discharge of his duties." Second, if the officer is found to have acted in a malicious, wanton, or willful manner, the municipality may seek reimbursement from the officer and will not be liable to him for any losses. In other words, by arguing that the officer's actions were malicious, wanton, or willful, the municipality may escape financial liability under the statute. Therefore, in order to prevent the potential conflict of interest it is necessary that the municipality waive whatever rights to reimbursement it may have under § 7–101a and agree to pay any judgment entered against the officer.

## II. *Waiver of Defense and Right to Reimbursement*

By virtue of Conn.Gen.Stat. § 7–101a, a municipality is obligated to provide a defense for any of its officers or employees who are sued for actions occurring in the discharge of their duties. Although a municipality may meet this obligation by hiring separate lawyers for itself and its employees, in many cases it may be much more economical to have the same attorney represent both clients. This is the course chosen by the defendants in the instant case.

If the municipality chooses to reduce its legal costs by providing joint representation, it is necessary that the municipality take steps to reduce or eliminate the potential conflict of interest. Because Conn. Gen.Stat. § 7–101a already imposes a duty upon the municipality to hold its officers and employees harmless, the conflict of interest can be eliminated by the municipality waiving the defenses to liability that are permitted under § 7–101a.

---

**2.** No conflict would exist when the co-defendants are a municipality and its employee sued only in his official capacity. The Supreme Court has recently held that in a § 1983 action in which a public employee is sued in his "official capacity," only the liability of the governmental entity by whom he is employed is at issue. *Brandon v. Holt*, — U.S. —, —, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985). The Court had previously noted that suits against a government employee in his official capacity were in actuality suits against the entity of which he was an agent. *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978). Because of the identity of defendant government entities and defendant public servants in their official capacities, the same theories of liability protect both, and neither has a defense available which it can assert to the detriment of the other. Consequently, no conflict of interest can arise.

■ In the instant case the municipality and the individual defendants have filed a joint answer admitting that the officers were acting within the scope of their duties. *See* note 1, *supra*. [3] However, the municipality must provide a waiver of all rights it may have against the employee for reimbursement of legal expenses.[4] The municipality must also agree to pay any judgment entered against the officer whether or not his actions are found to be willful, wanton, malicious or *ultra vires*. By complying with these requirements the municipality will remove any potential conflicts of interest, at least from a financial viewpoint, between the jointly represented parties.

### III. *Informed Consent*

■ When co-defendants in a § 1983 action are represented by the same counsel, the trial court is obligated to ascertain that notice of any potential conflict of interest is provided to affected litigants. *Dunton v. County of Suffolk*, 729 F.2d 903, 909 (2d Cir.1984). In *Dunton*, the court found disqualification appropriate because the County Attorney, defending both the police officers and their county employer, did in fact undermine the officer's good faith immunity defense at trial. The court did not hold that disqualification is mandated in all cases of joint representation and inherent conflict, but rather held that a district court has a duty to ensure that defendants potentially affected by such a conflict are fully cognizant of the circumstances. *Id.* at 908.

In so holding, the *Dunton* court followed a prior Second Circuit decision in *In re Taylor*, 567 F.2d 1183 (2d Cir.1977). The *Taylor* court rejected a blanket "single rep-resentation" rule which would require separate representation in all instances of potential or actual conflict. Rather, the court held that, while affected clients should be fully informed of possible adverse consequences of joint representation, they should also be free to retain the counsel of their choice subsequent to receiving the requisite information. *Id.* at 1191.

It is the responsibility of this court to ascertain that defendants Keyes and Da-Costa have the knowledge and understanding necessary to make an informed choice of counsel. As a means of ensuring that the litigants have such knowledge and understanding, the defense attorney shall provide this court with an affidavit from each of the individual defendants stating that he has been given adequate notice of the conflict inherent in joint representation, and that he has chosen to continue to retain the municipality's attorney as his counsel. The officers must also be informed of their right, under Conn.Gen.Stat. § 7–101a, to have the municipality pay for their defense if they choose to employ separate attorneys. However, if they choose to employ separate attorneys the municipality will not be required to waive its right to seek reimbursement under § 7–101a(b).

### IV. *Conclusion*

A potential conflict currently exists in the representation of the municipality and individual defendants by the same attorney. The motion to disqualify defendants' attorney from joint representation is therefore granted unless the defendants comply with the requirements of this ruling.

SO ORDERED.

---

**3.** By admitting that the employee was acting in the discharge of his duties for purposes of Conn. Gen.Stat. § 7–101a, the municipality is not necessarily admitting that the employee was acting pursuant to an official policy or custom so as to make the municipality liable under *Monell.* The phrase "within the discharge of his duties," as used by § 7–101a, includes *ultra vires* acts. Conn.Gen.Stat. § 7–101a(b). *Ultra vires* acts are those taken without any authority whatsoever, and will not serve to impose liability on the municipality. *Cf. Florida Department of State v.*

*Treasure Salvors, Inc.*, 458 U.S. 670, 697, 102 S.Ct. 3304, 3321, 73 L.Ed.2d 1057 (1982) (Eleventh Amendment does not protect state officers from suit based upon unauthorized acts).

**4.** Such an agreement to pay any verdict entered against the officer is required for joint representation by Conn.Gen.Stat. § 7–465, another statute imposing liability upon municipalities for damages caused by their employees.