Catherine A. GALVIN

v.

Douglas LLOYD, Stephen Downing, Harry Gaucher, James Harkins, Raymond James, and Mark Shipman, individually and in their capacities as members of the Connecticut Commission on Medicolegal Investigations

Civ. No. H–86–348(AHN).

United States District Court, D. Connecticut.

July 13, 1987.

Joan C. Harrington, Koskoff, Koskoff &
Beider, Bridgeport, Conn., for plaintiff.

Richard J. Lynch, Lisa B. Oliveri, Office
of the Atty. Gen., Hartford, Conn., for de-
fendants.

## RULING ON MOTIONS TO DISMISS

NEVAS, District Judge.

On March 19, 1986, the Connecticut Commission on Medicolegal Investigations ("Commission") announced that Dr. Catherine Galvin had been removed as Chief Medical Examiner ("CME") for the State of Connecticut. The Commission then appointed another pathologist to the vacancy. Dr. Galvin brought suit on April 2, 1986, against some members of the Commission in both their official and individual capacities. The plaintiff alleges that her removal by the defendants violated federal and state law, and she seeks injunctive, declaratory, and monetary relief. The defendants have moved to dismiss pursuant to Rules 12(b)(2) and 12(b)(6), Fed.R.Civ.P. For the reasons stated below, the defendants' motions[1] are granted in part and denied in part.

### Facts and Procedural Posture

The facts alleged are as follows: The Commission, acting under Section 19a–404 of the Connecticut General Statutes,[2] appointed Dr. Galvin, a forensic pathologist, to the post of CME on February 9, 1981. She served continuously in that capacity until her removal in March of 1986. On March 4, 1986, a Connecticut television station broadcast allegations about Dr. Galvin that were made by an employee of her office. In response to these allegations, the chairperson of the Commission, defendant Dr. Douglas Lloyd, requested that the plaintiff take accrued vacation time. On March 6th, Dr. Galvin began vacation leave but continued to sign autopsy reports and other work-related documents. The employee's allegations and the plaintiff's dismissal on March 19th were the subject of substantial media coverage.

The plaintiff alleges violations of 42 U.S.C. Section 1983; the Fourteenth Amendment to the United States Constitution; Article 1, Section 10 of the Connecticut Constitution;[3] and section 19a–404 of the Connecticut General Statutes. Jurisdiction is predicated on section 1983, 28 U.S.C. Section 1331, and the doctrine of pendent jurisdiction. She alleges that the defendants deprived her of constitutionally-protected property and liberty interests when they terminated her employment without due process of law. The plaintiff seeks reinstatement to her position as CME; a declaratory judgment that she was wrongfully removed from this position; back pay, front pay, and compensatory damages; an injunction precluding the appointment of any other individual as CME; and costs and attorneys' fees.

1. The defendants have filed individual motions to dismiss, each based on the same grounds.

2. The statute reads:

   The chief medical examiner shall be a citizen of the United States and a doctor of medicine licensed to practice medicine in Connecticut and shall have had a minimum of four years postgraduate training in pathology and such additional subsequent experience in forensic pathology as the commission may determine, provided any person otherwise qualified who is not licensed to so practice may be appointed chief medical examiner, provided he shall obtain such a license within one year of his appointment. His term of office and annual salary shall be fixed by the commission and he may be removed by the commission only for cause. Under the direction of the commission, he shall prepare for transmission to the director of the budget as required by law estimates of expenditure requirements. He shall account to the state treasurer for all fees and moneys received and expended by him by virtue of his office. He may as part of his duties teach medical and law school classes, conduct special classes for police investigators and engage in other activities related to the work of his office to such extent and on such terms as may be authorized by the commission.
   Conn.Gen.Stat. Section 19a–404.

3. Article 1, Section 10 states: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." Conn.Constit., art. I, section 10 (1965). The Connecticut Supreme Court has held that the "due course" clause in Article 1, Section 10 has the same meaning as the due process clause of the Fourteenth Amendment. *See Roundhouse Construction Corp. v. Telesco Masons Supplies Co., Inc.*, 170 Conn. 155, 159, 365 A.2d 393, 395, *cert. denied*, 429 U.S. 889, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976). In light of this similarity, the court's analysis of the plaintiff's Fourteenth Amendment claim applies with equal force to her Article 1, Section 10 claim.

*Discussion*

## A. *Rule 12 Standards*

A Rule 12(b)(6) motion to dismiss is properly granted only where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 58 (2d Cir.1985) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). Moreover, in ruling on a motion to dismiss for failure to state a claim, all well-pleaded factual allegations set forth by the plaintiff must be taken as true. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977). In addition, the allegations of the complaint must be construed in the light most favorable to the non-moving party. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

■ The plaintiff and the defendants have presented facts and documentary proof outside the complaint. Rule 12(b), Fed.R.Civ.P., states in pertinent part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

This provision expressly permits the court to examine matters in addition to the pleadings when considering a Rule 12(b)(6) motion to dismiss. If such additional matters are examined, the motion will be construed as if it had been brought for summary judgment under Rule 56, Fed.R.Civ.P. The court has complete discretion in deciding whether to accept such matters, but once it does, conversion to a Rule 56 motion is mandatory. *See Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972) (per curiam). *See generally* 5 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* Section 1366 (1969 & Supp.1986) ("Wright & Mil-

ler"). The court elects not to draw on these extraneous matters in fashioning its ruling. Thus, the defendants' 12(b)(6) motion shall not be treated as one for summary judgment, and the court will limit its analysis to the four corners of the complaint.

## B. *Fourteenth Amendment*

■ The Fourteenth Amendment due process clause attaches only if a state action impairs a person's "life, liberty, or property." Where this action does not deny life, liberty, or property, the government need not provide a procedure to determine the fairness of the impairment, no matter how adverse the effect of the action on the individual. The terms life, liberty, and property are not defined in the Constitution, and the Supreme Court has narrowly construed them. In the instant case, the plaintiff alleges that the defendants' state action deprived her of protected property and liberty interests without due process.

### (i) *Alleged Property Interest*

■ Property interests protected by procedural due process are not created by the Constitution. "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.... *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In *Roth,* the court held that a non-tenured teacher who was refused employment after expiration of a one-year contract had no claim of entitlement to the job because state law left the retention of such teachers in the total discretion of school officials. *Id.* at 578, 92 S.Ct. at 2709. The Court noted that the teacher "surely had an abstract concern in being rehired, but he did not have a *property* interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment." *Id.* (emphasis in original). Cases decided after *Roth* have re-emphasized the principle that the meaning of local law is crucial when deciding whether a property interest is protected by due process. *See, e.g., Bishop v. Wood,* 426 U.S.

341, 344 n. 7, 96 S.Ct. 2074, 2077 n. 7, 48 L.Ed.2d 684 (1976). Though a state may create a property interest, it cannot define the procedures for terminating that interest unless the state procedures meet or exceed the minimum procedural requirements of federal due process. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 539–42, 105 S.Ct. 1487, 1492–93, 84 L.Ed.2d 494 (1985).

The Commission appointed Dr. Galvin to the CME position pursuant to Section 19a–404 of the General Statutes, which states in relevant part: "His term of office and annual salary shall be fixed by the commission and he may be removed by the commission only for cause." Conn.Gen.Stat. Section 19a–404. The plaintiff argues that this provision, by use of the phrase "only for cause," creates an entitlement to employment that can be divested only after due process safeguards are satisfied. Plaintiff's Brief in Opposition to Motion to Dismiss ("Plaintiff's Brief") at 17–20.

The Court has found that a state statute permitting employment dismissal "only for cause" creates a property interest protected by due process: "The hallmark of property ... is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982) (citations omitted). *See also Goss v. Lopez,* 419 U.S. 565, 573, 95 S.Ct. 729, 735, 42 L.Ed.2d 725 (1975) ("absent sufficient cause for discharge," state employee "may demand the procedural protections of due process").

The defendants do not dispute that section 19a–404 creates a protectable property interest, but they argue that it is inapplicable to the plaintiff because her fixed term expired before the Commission made its formal announcement on March 19, 1987. Memorandum of Defendants in Support of Motions to Dismiss ("Defendants' Memorandum") at 5–21. According to the defendants, the Commission appointed Dr. Galvin to a five-year term that ended on February 10, 1986. Thus, they argue, the plaintiff had no property interest entitling

her to due process when she was discharged as a holdover on March 19, 1986. *Id.* at 12. The plaintiff counters that section 19a–404 creates an indefinite term of appointment where removal of a CME can be made only for cause. Plaintiff's Brief at 17–20; Complaint para. 13. The parties have not cited, nor has the court located, cases interpreting the disputed language in the provision. At some future point in this litigation, the court may have to address the meaning of section 19a–404, but for the present the court denies on other grounds the defendants' challenge to the legal sufficiency of the plaintiff's property interest claim.

■ Protected property interests may arise from "independent source[s]" other than state statutory law. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. The plaintiff alleges that at the time the defendants removed her from office, "they continued to request her services on a contractual basis to complete autopsies...." Complaint para. 29. The plaintiff also argues that even if her fixed term ended in February 1986, it may have been extended by an "express or implied contract or other mutual understanding between the Commission and Dr. Galvin." Plaintiff's Brief at 21. The Court has recognized such agreements as an "independent source" sufficient to create a protected property interest. *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). Connecticut law recognizes oral and implied contracts. *See, e.g., Rahmati v. Mehri,* 188 Conn. 583, 587, 452 A.2d 638, 640 (1982) (implied contracts); *Wykowski v. Presti,* 7 Conn.App. 188, 189, 508 A.2d 444, 445 (1986) (oral contracts). The defendants fail to address non-statutory underpinnings for a protected property interest. Even if the court were to accept the defendants' argument that Dr. Galvin's fixed term expired in February of 1986, the plaintiff's allegation of continuous employment until March 19, 1986—predicated on some basis other than a fixed term—is sufficient to survive the defendants' motions to dismiss.

### ii. *Liberty Interest*

The Court has not explicitly defined the meaning of liberty as guaranteed by the Fourteenth Amendment, *Roth*, 408 U.S. at 572, 92 S.Ct. at 2706, but the term does include "the right of the individual to contract, to engage in any of the common occupations of life, ... and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness...." *Id.* (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923)). The *Roth* Court noted that in the context of employment, an employee seeking to establish a liberty interest must demonstrate that his governmental employer has stated falsehoods that "might seriously damage his standing and associations in his community," or that impose a "stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities." 408 U.S. at 573, 92 S.Ct. at 2707. But mere nonrenewal is not such a stigma upon an employee's good name, reputation, honor, or integrity as to constitute a liberty deprivation. *Id.* at 574 n. 13, 92 S.Ct. at 2707 n. 13. Moreover, the Court has made clear that "reputation alone, apart from some more tangible interest such as employment, is [n]either 'liberty' [n]or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1161, 47 L.Ed.2d 405 (1976). A liberty interest is implicated, however, and a name-clearing hearing required, where a governmental employer creates and publicizes a false and defamatory impression about an employee in connection with the employee's discharge. *See Codd v. Velger*, 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977) (per curiam) (impression created must be false in order to implicate liberty interest); *Bishop*, 426 U.S. at 348, 96 S.Ct. at 2079 (stigmatizing information must be made public to form the basis of a liberty interest cause of action).

Dr. Galvin alleges that the defendants deprived her of her liberty interest in her professional reputation and ability to practice her profession when they summarily terminated her in a manner which inflicted a stigma on her. Complaint para. 22 The defendants argue that this allegation is deficient because it fails to state: (1) that the defendants made any statements or charges against her; (2) that these statements were false; and (3) that the statements were publicized. Defendants' Memorandum at 22. The plaintiff argues that her allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss. Plaintiff's Brief at 25–26.

The plaintiff does not allege, however, that the defendants made false and defamatory statements about her dismissal or about the events leading to her dismissal. In fact, the only reference in her complaint to a statement made by the defendants is that after closed session on March 19, 1986, the defendants "made an announcement to the effect that Dr. Galvin was no longer Chief Medical Examiner." Complaint para 18. Even when viewed in a light most favorable to the plaintiff, it is difficult for the court to find a liberty interest allegation in the fact that the defendants "announc[ed]" their decision. Moreover, the plaintiff recognizes that "a liberty interest is ... implicated when false *information* is disseminated in connection with a discharge or failure to re-appoint." Plaintiff's Brief at 24–25 (emphasis added). The plaintiff fails to plead what "information" the defendants have falsely created and publicized. The court grants the defendants' motion to dismiss the liberty interest claim but with leave for the plaintiff to amend her complaint.

### C. *Qualified Immunity*

The Court has recognized a qualified immunity defense to section 1983 suits for governmental officials sued for damages in their individual capacities. In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Court addressed the scope of immunity available to the President's advisers when sued for damages based on their official acts. In finding that qualified immunity represents the norm for such officials, the Court fashioned a test for assessing when the immunity attaches: "[G]overnment officials performing discretionary functions generally are shielded

from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738 (citations omitted).[4] The *Harlow* Court created an objective standard that negated the subjective one set forth in *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). In *Wood,* an official lost qualified immunity if he "knew or reasonably should have known" that his conduct would violate a plaintiff's constitutional rights or if he acted "with malicious intention to cause a deprivation of constitutional rights or other injury...." *Id.* at 322, 95 S.Ct. at 1001.

■■■ Qualified immunity is an affirmative defense that must be pleaded by the official claiming it. *Satchell v. Dilworth,* 745 F.2d 781, 784 (2d Cir.1984) (citing *Harlow,* 457 U.S. at 815, 102 S.Ct. at 2736). The only pleading filed in the present case is the complaint; the defendants raise their qualified immunity defense not in a responsive pleading under Rule 8(c), Fed.R.Civ.P., but in their memoranda in support of their motions to dismiss. In general, "the defense of qualified immunity cannot support the grant of a ... 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio,* 722 F.2d 1013, 1018 (2d Cir.1983). Nevertheless, a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, but the defense must clearly appear on the face of the complaint. *Quiller v. Barclays American/Credit, Inc.,* 727 F.2d 1067, 1069 (11th Cir.1984) (affirmative defense of federal preemption did not clearly appear on face of complaint). *See also Scott v. Kuhlmann,* 746 F.2d 1377, 1378 (9th Cir. 1984) (affirmative defense of *res judicata* clearly apparent on face of complaint); *Cross v. Lucius,* 713 F.2d 153, 158 (5th Cir.1983) (affirmative defense of statute of limitations clearly apparent on face of complaint). For a defendant to prevail without

having pleaded an affirmative defense, the complaint must include

> matters of avoidance that effectively vitiate the pleader's ability to recover on the claim.... [T]he complaint is said to have a built-in defense and is essentially self-defeating. Thus, the problem is not that plaintiff merely has anticipated and tried to negate a defense he believes his opponent will attempt to use against him; rather plaintiff's own allegations show that the defense exists.

5 C. Wright & A. Miller, Section 1357 at 606–07.

■■■ The affirmative defense of qualified immunity is not clearly apparent on the face of Dr. Galvin's complaint. She does not set out matters that would "effectively vitiate" her "ability to recover on the claim." *Id.* She states merely that she is suing the defendants in both their individual and official capacities. Complaint paras. 4–9. It would be incongruous for a court to consider a defendant's qualified immunity defense simply because the plaintiff has named the defendant in his or her individual capacity. If this were the norm, there would be no need for the general rule that qualified immunity is an affirmative defense that must be pleaded.

Furthermore, the *Harlow* Court has noted that qualified immunity is better addressed on a motion for summary judgment: "On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred." 457 U.S. at 818, 102 S.Ct. at 2738. *See also Mitchell v. Forsyth,* 472 U.S. 511, 525, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). The defendants implicitly recognize that their defense is prematurely raised. They frame their arguments, for the most part, in a Rule 56, Fed.R.Civ.P., context. They note that documents have been attached to their Rule 12(b) motions to support their contention that genuine issues of material fact are

---

**4.** Although *Harlow* involved a suit against federal officials, that Court indicated that the objective standard of qualified immunity applies with equal force to section 1983 suits against state officials. 457 U.S. at 818 n. 30, 102 S.Ct. at 2738 n. 30 (citing *Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978)).

absent from this case. Defendants' Brief in Support of Defense of Qualified Immunity ("Defendants' Immunity Brief") at 3. Because the court has declined to treat the pending motions under Rule 56, and because the defendants' affirmative defense is not clearly apparent on the face of the complaint, the court dismisses without prejudice the defendants' qualified immunity defense as having been untimely brought.

The question remains as to what restrictions, if any, should be placed on the scope of discovery in the present controversy. Currently in effect is a protective order, issued June 25, 1986, limiting discovery to the time period before March 1, 1986. The plaintiff now seeks limited discovery on the issue of qualified immunity for the period up to and including March 19, 1986, the date of Dr. Galvin's dismissal. Plaintiff's Immunity Brief at 3. Specifically, she wishes to probe the circumstances surrounding the defendants' allegedly illegal conduct and any knowledge on their part that they were violating the law. *Id.* The defendants argue that *Harlow* bans such probing until the qualified immunity question is resolved. Defendants' Immunity Brief at 4–9.

As at least partial justification for its holding, the *Harlow* Court reasoned that implementing an objective test for qualified immunity would decrease the number of suits proceeding to trial. 457 U.S. at 815–19, 102 S.Ct. at 2736–38. According to the Court, under the subjective standard in *Wood,* a plaintiff could usually survive a Rule 56, Fed.R.Civ.P., motion because "questions of subjective intent so rarely can be decided by summary judgment." *Id.* at 816, 102 S.Ct. at 2737. But "[r]eliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Id.* at 818, 102 S.Ct. at 2738. The Court goes on to state that "[u]ntil [the] threshold immunity question is resolved, discovery should not be allowed." *Id.* The defendants seize upon this seemingly mandatory language as support for their argument that the June, 1986, protective order should not be lifted. Defendants' Immunity Brief at 6.

There are two instances, however, where the *Harlow* Court appears to temper this discovery proscription. At one point, the Court concludes that "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of *broad-reaching discovery.*" 457 U.S. at 817–18, 102 S.Ct. at 2737–38 (emphasis added). In a concurring opinion, Justice Brennan notes that "*some measure of discovery* may *sometimes* be required to determine exactly what a public-official defendant did 'know' at the time of his actions." *Id.* at 821, 102 S.Ct. at 2740 (emphasis added).

The Court clarified the *Harlow* discovery language in *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). In ruling that presidential cabinet officers enjoy qualified immunity from suit for damages arising out of illegal conduct, the *Mitchell* Court reaffirmed the *Harlow* qualified immunity test, *id.* at 525, 105 S.Ct. at 2815, and set out with specificity the interrelationship between this affirmative defense and discovery:

> Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. See [*Harlow,* 457 U.S.] at 818 [102 S.Ct. at 2738].... Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts.

*Id.* at 526, 105 S.Ct. at 2816. Thus, *Mitchell* permits a defendant to raise qualified immunity as a bar to litigation in two distinct ways.

As a threshold matter, the court must scrutinize the complaint with particularity for factual allegations which, when taken as true and viewed in a light most favor-

able to the plaintiff, describe as a matter of law a violation of a clearly established statutory or constitutional right of which a reasonable government official would have known. Absent such allegations in the complaint, a plaintiff is precluded from proceeding further on the claim for damages against the official in his or her individual capacity. *Harlow* and *Mitchell* therefore provide a public-official defendant with a unique opportunity for obtaining summary judgment before discovery begins and while limiting the court's inquiry to the well-pleaded allegations of the complaint.[5] This unique opportunity exists, according to the *Mitchell* Court, because of the special nature of the qualified immunity defense; it is

> an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. Accordingly, the reasoning that underlies the immediate appealability of an order denying absolute immunity indicates to us that the denial of qualified immunity should be similarly appealable: in each case, the district court's decision

is effectively unreviewable on appeal from a final judgment.

*Id.* at 526–27, 105 S.Ct. at 2816 (emphasis in original).

■ If a plaintiff scales this threshold barrier, discovery may proceed and traditional Rule 56, Fed.R.Civ.P., standards may be applied to ascertain whether there is a genuine issue of fact as to the occurrence of the allegedly illegal acts. In this secondary inquiry, a court may move freely among extra-pleading materials in its search for *actual* facts in dispute; in the threshold inquiry, a court is confined to *alleged* facts within the complaint.

The court recognizes that it has merely postponed until another day its inquiry into the substance of the *Mitchell* threshold test, but, anticipating resurrection of the defendants' qualified immunity defense, now suggests how the parties can place the issue squarely before the court. If the plaintiff amends her liberty interest claim, the defendants may file an answer to the amended complaint pleading any affirmative defense or defenses they deem appropriate.[6] At the same time, the defendants

---

5. Few courts have addressed the discovery standard of *Harlow* and *Mitchell*. In *Kennedy v. City of Cleveland,* 797 F.2d 297, 299 (6th Cir. 1986), the court decided, without explanation for its conclusion, that the immunity bar may be initially raised in a motion to dismiss. In *In re Scott County Master Docket,* 618 F.Supp. 1534, 1551 (D.Minn.1985), the court noted that *Mitchell* allows "dismissal" before discovery begins if the allegations of the complaint do not meet the *Harlow* qualified immunity test. In *Pennington v. Bucan,* 620 F.Supp. 877, 879 (S.D. Ohio 1985), the court placed the threshold inquiry at the summary judgment level of litigation.

The relevant language from *Mitchell* reads: "Unless the plaintiff's allegations state a claim of violation of clearly established law, the defendant *pleading* qualified immunity is entitled to *dismissal* before the commencement of discovery." 472 U.S. at 526, 105 S.Ct. at 2816 (emphasis added). The word "pleading" would seem to indicate that the threshold inquiry is appropriately considered after an answer is filed; under such analysis, the defense would not ordinarily be available on a Rule 12(b), Fed.R.Civ.P., motion to dismiss. However, the word "dismissal" seems to indicate that the defense can be raised before summary judgment. Perhaps the Court is indicating that the proper time for raising the threshold inquiry is in a

Rule 12(c), Fed.R.Civ.P., motion for judgment on the pleadings. Such an interpretation would harmonize the words "pleading" and "dismissal."

6. Obviously, different variations on this theme may occur. If the plaintiff does not amend her liberty interest claim, the defendants may choose to proceed against the property interest claim only. The court also notes that the plaintiff is not precluded from amending her complaint on matters beyond the liberty claim. The property interest claim has met the legal sufficiency necessary under a Rule 12(b)(6) attack, but the court expresses no opinion on whether these allegations as pleaded would survive the *Harlow/Mitchell* standard. In addition, the defendants are not precluded from challenging the Rule 12 legal sufficiency of any amended liberty claim filed by the plaintiff. The most expeditious way to do this would be to file an answer and include a Rule 12(c), Fed.R.Civ.P., motion with the suggested summary judgment motion. To some extent, the parties have already addressed the substance of the "clearly established" standard in their immunity briefs: the litigants may rely on those briefs if the defendants' qualified immunity challenge arises, or they may wish to file new briefs structured in accordance with the matters addressed in this ruling.

may file a motion for summary judgment based on their qualified immunity claim. The court will undertake an initial analysis in line with the *Mitchell* threshold test: if the court rules for the plaintiff, the protective order on discovery will be removed and the litigation may proceed to the second stage of the *Mitchell* guidelines; if the defendants prevail, their qualified immunity defense will shield them from liability for damages in their individual capacities.[7]

## D. *Eleventh Amendment*

The defendants raise the Eleventh Amendment as a bar to monetary relief against them in their official capacities. Defendants' Memorandum at 27–30. It is now well settled that suits against state officials in their official capacities are, in reality, suits against the state. *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985). Moreover, the Court has clearly and unequivocally stated that the Eleventh Amendment prohibits monetary awards that must be met from the general revenues of the state. *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). *See also Green v. Mansour,* 474 U.S. 64, —— 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985); *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 101–02, 104 S.Ct. 900, 908–09, 79 L.Ed.2d 67 (1984); *Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979). Absent a state's waiver or consent, payment from state funds is permitted only when it is necessary to comply in the future with court-ordered injunctive relief. *Edelman,* 415 U.S. at 667–68, 94 S.Ct. at 1357–58 (citing *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). Thus, the plaintiff is precluded from seeking damages for conduct by the defendants in their official capacities.

The plaintiff recognizes this preclusion, but she disputes the defendants' use of the Eleventh Amendment shield to block her claims of injunctive and declaratory relief. Plaintiff's Brief at 31–34. The defendants argue that the state has not waived its sovereign immunity as to these forms of relief. Defendants' Brief at 30–32. The defendants misunderstand the scope of the state's sovereign immunity; *Edelman* and its progeny prohibit retrospective monetary relief, but they do not prevent prospective relief in the form of injunctions and declaratory judgments. *See, e.g., Dwyer v. Regan,* 777 F.2d 825, 836 (2d Cir.1985) (reinstatement is purely prospective injunctive relief not barred by the Eleventh Amendment); *Solin v. State University of New York,* 416 F.Supp. 536, 539–40 (S.D.N.Y.1976) (claim for declaratory relief survives "regardless of the applicability of the Eleventh Amendment"). *See generally* 17 Wright & Miller, Section 4232 at 364–65.

## E. *Potential Conflict of Interest*

The Connecticut Attorney General's Office represents the defendants in both their official and individual capacities. Such joint representation in section 1983 suits sometimes creates a potential conflict of interest because different theories of liability and defenses may be applicable under each capacity. If the plaintiff were to prevail on all claims in the present controversy, the individual defendants would presumably be liable for all damages awarded because the Eleventh Amendment bars payment of such relief from the state treasury. The plaintiff questions whether the defendants are aware that they are not shielded by the state's sovereign immunity. Plaintiff's Brief at 29–31. The defendants do not address this issue.

In *Manganella v. Keyes,* 613 F.Supp. 795 (D.Conn.1985) (Burns, J.), the plaintiff brought a section 1983 suit against the Town of East Haven and two police officers in their individual and official capacities. The same attorney represented all

---

7. The qualified immunity defense may not be applicable to claims seeking non-monetary relief. *Harlow,* 457 U.S. at 819 n. 34, 102 S.Ct. at 2739 n. 34; *see also Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984). Although the plaintiff may be entitled to discovery on her injunctive and declaratory relief claims, the court in its discretion postpones ruling on this matter until it decides the qualified immunity question with respect to damages.

the defendants. The plaintiff moved to disqualify the attorney from joint representation "claiming an inherent conflict of interest between the defense of the police officers in their individual capacities and the defense of the municipality." *Id.* at 796. The court noted that police officers enjoy a qualified immunity defense not available to municipalities and local governments. *Id.* at 797 (citing *Owen v. City of Independence,* 445 U.S. 622, 637, 100 S.Ct. 1398, 1408, 63 L.Ed.2d 673 (1980)). Thus, a police officer successfully asserting a qualified immunity defense may leave the municipality wholly liable for damages. 613 F.Supp. at 797–98. *See also Dunton v. County of Suffolk,* 729 F.2d 903, 907 (2d Cir.1984). The district court described the potential conflict thusly:

> The attorney representing both the police officer and the municipality is faced with two opposing defenses of his clients. On behalf of the police officer he may be required to argue that his client was performing his duties in accordance with official policy. At the least, the success of this defense will lead to joint liability with the municipality, and may result in sole liability of the municipality if the officer is found to be protected by qualified immunity. However, on behalf of the municipality, the attorney may be required to argue that the officer's actions were violative of municipal policy or custom, potentially resulting in the officer's exclusive liability.

613 F.Supp. at 798.

In resolving this potential conflict of interest, the court noted that separate representation is not required in all instances of potential or actual conflict; affected clients should be free to retain counsel of their choice after being informed of the possible adverse consequences attendant to joint representation. *Id.* at 799 (citing *In re Taylor,* 567 F.2d 1183, 1191 (2d Cir.1977)). Judge Burns ordered that the defense attorney in *Manganella* provide the court "with an affidavit from each of the individual defendants stating that he has been given adequate notice of the conflict inherent in joint representation and that he has chosen to continue to retain the municipality's attorney as his counsel." 613 F.Supp. at 799.

The degree of potential conflict in the instant action is far less than that before the court in *Manganella.* In this case, the plaintiff's claim for damages goes to the individual defendants only and not to the state. The defenses to damages raised by the defendants in their dual capacities are not in direct conflict: Because the Eleventh Amendment proscribes liability for damages for official conduct, defendants' counsel will not be motivated to undercut the qualified immunity defense to unofficial conduct. Thus, it would appear that defendants' counsel would have no reason to give their clients less than full representation.[8]

■ Though the court perceives no apparent conflict of interest at this juncture in the litigation, a court is under a duty to ensure that a litigant is "fully aware of the nature of the conflict...." *Dunton,* 729 F.2d at 908 (quoting *Taylor,* 567 F.2d at 1191). Therefore, defendants' counsel are directed to file with the court, within 21 days of this ruling, an affidavit from each of the defendants stating that he has been given adequate notice of his potential liability for damages and that he has chosen continued representation by the Attorney General's Office. Such informed consent should allay present concerns about potential conflict; if other doubts arise in the future, the plaintiff may bring them to the court's attention or the court will raise them *sua sponte.*[9]

---

**8.** The court does not suggest that defendants' counsel have been anything less than forthright with their clients about the inherent hazards of dual representation. And, as noted in the text, counsel have waged a vigorous campaign on the qualified immunity defense.

**9.** Also at issue in *Manganella* was a state statute, Conn.Gen.Stat. Section 7–101a, which obligates a municipality to provide a defense for officers or employees sued in their official capacities. Because the defense attorney in *Manganella* represented both the town and the police officers, Judge Burns required the municipality to reduce or eliminate the potential conflict of interest by waiving the defenses to liability available to it under section 7–101a. 613 F.Supp. at 798.

*Conclusion*

For all of the foregoing reasons, the court denies the defendants' motions to dismiss as to the plaintiff's property interest claim but grants the motions, with leave for the plaintiff to amend within 20 days of the issuance of this ruling, as to the plaintiff's liberty interest claim. On the issue of qualified immunity, the parties are directed to make any filings, except the plaintiff's amended complaint, in accordance with the time restrictions set forth in the Federal and Local Rules of Civil Procedure. The defendants are also directed to file affidavits, within 21 days of this ruling, complying with the guidelines set forth in the final portion of this ruling. The court's protective order, issued June 25, 1986 (*see* filing no. 26), remains unchanged.

---

The court also required the town to waive any right to reimbursement for legal fees it might have against the officers. *Id.* at 799. There is no indication in the present case that the state and the individual defendants have entered into hold harmless or indemnification arrangements, but if these exist, they should promptly be brought to the court's attention.